Filed 2/27/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JACOB AYERS,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FCA US, LLC,<br><br>    Defendant and Appellant. | B315884<br><br>Los Angeles County<br>Super. Ct. No. BC623368 |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Teresa A. Beaudet, Judge.  Reversed and remanded with directions.

Horvitz & Levy, Lisa Perrochet, John A. Taylor, Jr., Curt Cutting; Hawkins Parnell & Young, Barry R. Schirm and Mari Kiridjian for Defendant and Appellant.

Knight Law Group, Steve Mikhov, Roger Kirnos; Wirtz Law, Richard M. Wirtz; Greines, Martin, Stein & Richard, Joseph V. Bui and Cynthia E. Tobisman for Plaintiff and Respondent.

—————————————

This is an appeal of a costs judgment in favor of plaintiff Jacob Ayers entered after he and defendant FCA US, LLC (FCA) settled "lemon law" causes of action he asserted under the Song-Beverly Consumer Warranty Act (Song-Beverly), Civil Code section 1790 et seq.

We conclude Code of Civil Procedure[1] section 998 operates in this case to cut off plaintiff's right to attorney fees incurred after February 16, 2018, the date FCA made a valid and good faith offer to compromise the action.

Accordingly, we reverse and remand for entry of a modified judgment in accordance with this opinion.

## BACKGROUND

FCA manufactures and sells motor vehicles, including Jeeps. Plaintiff purchased a new Jeep Grand Cherokee in March 2013. The total sale price of the vehicle was $57,300.

Plaintiff experienced numerous problems with the Jeep during his first three years of ownership. Frustrated, he asked FCA to repurchase it in November 2015. FCA refused. Plaintiff retained counsel.

In March 2016, after plaintiff opted out of a class action settlement pertaining to vehicles like his, FCA made a written offer to repurchase plaintiff's Jeep. His counsel contacted FCA to discuss settlement but no settlement was reached. Plaintiff then sued.

Plaintiff's complaint included causes of action against FCA for violations of Song-Beverly and fraudulent inducement. Remedies under Song-Beverly include restitution equal to the price paid for the vehicle as well as discretionary civil penalties

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

in an amount up to double a buyer's actual damages (i.e., potentially three times the price paid).  (Civ. Code, § 1794, subds. (b), (c), § 1793.2, subd. (d).)

In July 2016, about a month after plaintiff filed his complaint, FCA served plaintiff with an offer to compromise pursuant to section 998.  As discussed in greater detail below, a plaintiff who rejects a reasonable offer of settlement made pursuant to section 998 and then fails to obtain a more favorable judgment is subject to certain burdens under the statute.  Among these is that the plaintiff cannot recover from the defendant postoffer costs to which the plaintiff might otherwise have been entitled, and the plaintiff may become liable for certain postoffer costs of the defendant.  (See § 998, subd. (c)(1).)  FCA's July 2016 offer was to buy back plaintiff's Jeep for $61,000 and pay his reasonable costs and attorney fees pursuant to Civil Code section 1794, subdivision (d) (Song-Beverly's fee-shifting provision) in exchange for dismissal of the lawsuit with prejudice. Plaintiff did not accept the offer and continued to litigate.

About a year later, in August 2017, FCA served a second section 998 offer with the same terms as the first, except FCA proposed to pay plaintiff $122,000.  Again, plaintiff did not accept the offer and continued to litigate.

In February 2018, FCA served a third section 998 offer with the same terms as the first two, except FCA again increased the amount it would pay plaintiff—this time to $143,498.  Again, plaintiff did not accept the offer and continued to litigate.

In August 2019, plaintiff made a section 998 offer of his own, seeking payment of $163,409 in exchange for the Jeep. After FCA rejected this offer.  Plaintiff renewed it less than eight weeks later and FCA rejected it again.

3

In January 2020, after driving the Jeep for seven years, plaintiff traded it in for a new vehicle. Plaintiff received a credit of $13,000 for the Jeep in the trade.

Several months later, plaintiff's trade-in took on new significance. In October 2020, Division One of this court held, as a matter of first impression, that Song-Beverly's restitution remedy "does not include amounts a plaintiff has already recovered by trading in the vehicle at issue" and excluded such amounts from the calculation of Song-Beverly penalties. (*Niedermeier v. FCA US LLC* (2020) 56 Cal.App.5th 1052, 1061, review granted Feb. 10, 2021, S266034.) Thus, in the wake of *Niedermeier*, a Song-Beverly plaintiff's maximum possible recovery was reduced by three times the amount of a trade-in.[2] Plaintiff's maximum potential recovery here was thus reduced by $39,000.

In January 2021, a few months after *Niedermeier* issued, plaintiff served FCA with another section 998 offer, this one for $125,000 plus costs, expenses and attorney fees pursuant to Civil Code section 1794, subdivision (d) as agreed by the parties or determined by the trial court in lieu of agreement. Like FCA's section 998 offers, it provided for dismissal of the lawsuit with prejudice. Unlike FCA's section 998 offers, it specified the timing of payment and gave plaintiff certain rights in the event of default. FCA accepted the offer.

---

[2]  Two Court of Appeal decisions have since rejected *Niedermeier* (*Figueroa v. FCA US, LLC* (2022) 84 Cal.App.5th 708, 714; *Williams v. FCA US LLC* (2023) 88 Cal.App.5th 765, 772), leaving to a trial court's discretion how to account for the effect of a vehicle trade-in when calculating restitution and penalties under Song-Beverly. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456.)

The parties failed to agree on the amount of Civil Code section 1794, subdivision (d) costs, expenses and attorney fees payable to plaintiff. Accordingly, plaintiff filed a motion to determine these amounts, requesting $220,852.50 in attorney fees and $40,512.75 in costs, for a total of $261,365.25. FCA opposed the motion on numerous grounds. As relevant here, FCA argued its February 2018 section 998 offer precluded plaintiff from recovering $74,527.50 in fees incurred after the date of that offer. Relatedly, and again in reliance on section 998, FCA separately moved to tax plaintiff's costs incurred after FCA served its February 2018 offer.

By a written order dated July 26, 2021, the trial court rejected FCA's section 998 arguments on two independent grounds, despite finding that "[p]laintiff could have received a larger settlement award if he had accepted the earlier settlement instead of waiting to propose a later, smaller award after a Court of Appeals' decision affected the calculus." First, it held that section 998's limitations on expense and cost recovery do not apply when the case is resolved by a pretrial settlement. Second, it held an intervening change in law that reduced the maximum amount plaintiff could recover at trial exempted him from the usual consequences of section 998. The trial court cited no authority for these holdings.

On January 31, 2022, the trial court entered a judgment in favor of plaintiff for attorney fees and costs totaling $187,747.75 ($73,617.50 less than plaintiff requested). The reduction had nothing to do with FCA's section 998 arguments.

FCA timely appealed the trial court's July 26, 2021 order granting plaintiff's motion for attorney fees and costs and denying in part FCA's motion to tax. We treat FCA's notice of

5

appeal, filed September 24, 2021, as a timely appeal of the January 31, 2022 costs judgment entered on the order appealed. (See Cal. Rules of Court, rule 8.104(d).)

## DISCUSSION

### 1.    Section 998 and Standard of Review

Section 998 provides, in relevant part, that "the costs allowed under Sections 1031 and 1032 shall be withheld or augmented" as follows:  "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer.  In addition, . . . the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."  (§ 998, subds. (a), (c)(1).)

To trigger the operation of section 998, an offer must be valid and made in good faith.  An offer is valid if it (i) complies with the statutory requirements that it be in writing, contain the terms of the offer, include a mechanism for acceptance, and provide for entry of judgment or a legal equivalent if accepted (*Perez v. Torres* (2012) 206 Cal.App.4th 418, 425 (*Perez*); see also § 998, subd. (a)); and (ii) is "sufficiently specific to allow the recipient to evaluate the worth of the offer and make a reasoned decision whether to accept the offer" (*Fassberg Construction Co. v. Housing Authority of City of Los Angeles* (2007) 152 Cal.App.4th 720, 764 (*Fassberg*)).  An offer is made in good faith if it "is ' " realistically reasonable under the circumstances

6

of the particular case" ' [citation]—that is, if the offer ' "carr[ies] with it some reasonable prospect of acceptance" '." (*Licudine v. Cedars-Sinai Medical Center* (2019) 30 Cal.App.5th 918, 924 (*Licudine*).)

We review questions of statutory interpretation de novo. (*Curtis Engineering Corp. v. Superior Court* (2017) 16 Cal.App.5th 542, 546.) When interpreting a statute, we must " ' " ' "determine the Legislature's intent so as to effectuate the law's purpose." ' " ' " (*Los Angeles Unified School Dist. v. Superior Court* (2023) 14 Cal.5th 758, 768.) To accomplish this, we must " ' " ' "first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.] "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " ' " (*Ibid.*)

While the question of whether a plaintiff obtained a more favorable result is ordinarily left to the trial court's discretion (*Linthicum v. Butterfield* (2009) 175 Cal.App.4th 259, 270), where the question turns on our statutory construction and the

7

application of that construction to undisputed facts, our review is independent (*Lee v. Silveira* (2015) 236 Cal.App.4th 1208, 1214).

## 2. Section 998 Applies to Awards Pursuant to Civil Code Section 1794, Subdivision (d) Attorney Fee and Cost Awards

Plaintiff argues that attorney fee and cost awards in favor of buyers under Civil Code section 1794, subdivision (d) (Song-Beverly's fee-shifting provision) are entirely exempt from section 998. We disagree.

Section 998 applies to all "costs allowed under Sections 1031 and 1032." (§ 998, subd. (a).) Only section 1032 is relevant here. Section 1032, subdivision (b) entitles a prevailing party, as defined in subdivision (a)(4), "to recover costs in any action or proceeding," unless "otherwise expressly provided by statute." For purposes of section 1032, costs include attorney fees authorized by contract, statute, or law. (§ 1033.5, subd. (a)(10).)

Relying on *Murillo v. Fleetwood Enterprises, Inc*. (1998) 17 Cal.4th 985, 992, superseded by statute as stated in *Toste v. CalPortland Construction* (2016) 245 Cal.App.4th 362, 375, plaintiff contends that a buyer's right to recover costs under Song-Beverly is wholly independent of section 998, and section 998 therefore does not apply. *Murillo* concerned the prevailing sellers' right to costs under sections 998, subdivision (c) and 1032, subdivision (b). (*Murillo,* at p. 988.) In rejecting the buyer's argument that Song-Beverly's cost-shifting provision Civil Code section 1794, subdivision (d) was the exclusive cost-shifting provision applicable to Song-Beverly actions, the court explained as follows: "On the one hand, if a buyer should prevail in an action under [Song-Beverly], he or she is entitled to costs, expenses, and attorney fees as set forth in

8

Civil Code section 1794(d). On the other hand, if a seller should prevail in an action brought under [Song-Beverly], it is entitled to costs under section 1032(b)." (*Murillo,* at p. 992.) *Murillo* did not hold, and does not support plaintiff's contention, that section 998 does not apply to lemon law cases.

The year after *Murillo* was decided, our Supreme Court made clear that section 998 applies to cost awards that are independent of section 1032—i.e., where the right to recovery is merely incorporated by reference through the definitions in section 1033.5. *Scott Co. v. Blount, Inc.* (1999) 20 Cal.4th 1103 (*Scott*) concerned apportionment of costs after the plaintiff rejected the defendant's section 998 offer and obtained a less favorable judgment at trial. (*Scott,* at p. 1106.) The primary costs at issue were attorney fees. The action involved a contract that contained an attorney fee provision only for enforcement actions taken by the defendant. Only by operation of Civil Code section 1717 did the plaintiff have any claim to attorney fees. (See *Scott,* at p. 1106 [explaining § 1717 makes any contractual attorney fees provision mutual, "even if it is written otherwise"].) The *Scott* court recognized section 998 applied both to the defendant's contractual right to attorney fees and the plaintiff's statutory right to the same. By operation of section 998, the plaintiff was entitled to recover costs up until the date of the offer (*Scott,* at p. 1112), and the defendant was entitled to recover costs incurred after the offer (*id.* at p. 1113). Even though the defendant was not the prevailing party as defined in section 1032, the court explained, it was "treated for purposes of postoffer costs *as if* it were the prevailing party." (*Scott,* at p. 1114.)

9

Under the circumstances of *Scott*, the cost entitlements were symmetrical because this is what the substantive statutory and contractual rights to those costs commanded. (*Scott*, *supra*, 20 Cal.4th at pp. 1113-1114.) But the *Scott* court recognized its holding would apply to asymmetrical cost entitlements in situations where the Legislature has "made a policy decision to treat prevailing plaintiffs and prevailing defendants differently for purposes of attorney fees and other costs." (*Id.* at p. 1115, fn. 3.) In such instances, "[s]ection 998 takes these differences as it finds them . . . . Thus, if the case is governed by a statute under which a prevailing plaintiff but not a prevailing defendant is entitled to attorney fees, then a defendant who does not prevail but is nonetheless entitled to its postoffer costs under section 998 is not entitled to its postoffer attorney fees as part of these costs, even though the prevailing plaintiff may obtain its *preoffer* attorney fees as part of its *preoffer* costs." (*Ibid.*, italics added.) It cited *Murillo*—again, a Song-Beverly case—as its sole illustration of section 998 applying to a statutory scheme involving asymmetrical cost entitlements. (*Scott,* at p. 1115.)

While dicta, *Scott*'s discussion of how section 998 would apply under the exact procedural posture of this case is highly persuasive. (*Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1149 ["the dictum of the Supreme Court, 'while not controlling authority, carries persuasive weight and should be followed where it demonstrates a thorough analysis of the issue or reflects compelling logic.' "].)

Several years after *Scott*, in a Song-Beverly action where the plaintiff failed to obtain a judgment more favorable than the defendant's section 998 offer, the court in *Duale v. Mercedes-Benz USA, LLC* (2007) 148 Cal.App.4th 718 (*Duale*) applied

10

section 998 just as *Scott* presaged: It allowed the plaintiffs their preoffer attorney fees as part of their preoffer costs because they were allowed under Civil Code section 1794, subdivision (d) and within the ambit of section 1032, subdivision (b); and it allowed the defendant its postoffer costs under section 1032, subdivision (b), which did not include attorney fees because no statute provided for them. (*Duale,* at pp. 724, 726.) It denied the plaintiffs their postoffer costs, including those provided under Civil Code section 1794, subdivision (d). (*Duale,* at p. 726.)

In the decade and a half since *Duale* was decided, the Legislature amended section 998 (see Stats. 2015, ch. 345, § 2) but did nothing to supersede *Duale*'s holding. Moreover, no published appellate decision has parted ways with *Duale*, and those that have cited *Duale* have done so favorably. (See *Madrigal v. Hyundai Motor America* (2023) 90 Cal.App.5th 385, 397, fn. 8 (*Madrigal*) [following *Duale*], review granted Aug. 30, 2023, S280598; *Smalley v. Subaru of America, Inc.* (2022) 87 Cal.App.5th 450, 460-461 [same]; *Covert v. FCA USA, LLC* (2022) 73 Cal.App.5th 821, 836 [same] (*Covert*).) "[W]here the Legislature amends a statute without altering a consistent and long-standing judicial interpretation of its operative language, courts generally indulge in a presumption that the Legislature has ratified that interpretation." (*People v. Escobar* (1992) 3 Cal.4th 740, 750-751.)

Plaintiff calls our attention to *In re Marriage of Green* (1989) 213 Cal.App.3d 14, and *Arave v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (2018) 19 Cal.App.5th 525, 553, which exempted particular proceedings and claims (in family law and under the Fair Employment and Housing Act (FEHA; Gov. Code, § 12900 et seq.), respectively) from the operation of section 998

11

because of specialized cost provisions governing those proceedings and claims. (*Marriage of Green*, at p. 24 [discussing family law statutes making need and ability to pay relevant to cost shifting and authorizing cost shifting as a sanction]; *Arave*, at p. 552 [certain cost shifting under FEHA limited to frivolous claims].) These are not Song-Beverly cases, and the provisions prompting the judicial exemptions in *Marriage of Green* and *Arave* and do not exist in Song-Beverly.

Plaintiff argues Song-Beverly's specific cost provisions in Civil Code section 1794, subdivision (d) nonetheless require a similar exemption. We are not persuaded. We view the provisions of section 1794, subdivision (d) as the prototypical "policy decision to treat prevailing plaintiffs and prevailing defendants differently for purposes of attorney fees and other costs" which "[s]ection 998 takes . . . as it finds them." (*Scott*, *supra*, 20 Cal.4th at p. 1115, fn. 3.) We further note that the Legislature promptly amended Government Code section 12965, subdivision (b) to adopt the section 998 exemption announced in *Arave* (see Stats. 2018, ch. 955, § 5), rendering legislative inaction in response to *Duale* all the more meaningful.

Like our sister courts and the Legislature, we will not depart from *Duale*. And in response to plaintiff's policy arguments, we specifically adopt *Duale*'s conclusion that section 998, subdivision (c) and Civil Code section 1794, subdivision (d) can operate in harmony to effectuate their respective legislative purposes: Song-Beverly "allows prevailing injured car buyers to recover attorney fees and costs in order to render such lawsuits 'economically feasible' [citation]; but declining to award such a buyer postoffer attorney fees and costs if he has refused a reasonable pretrial settlement offer does not

12

defeat that purpose.  An injured plaintiff may be encouraged to sue by the prospect of recovering his costs if successful, but no articulated public policy is served by allowing him to maintain a lawsuit that loses its economic viability by virtue of the seller's willingness to settle on terms better than those a jury will award." (*Duale*, *supra*, 148 Cal.App.4th at p. 728.)

3.      **Section 998 Applies Even Where the Litigation Is Terminated by Settlement**

Having concluded section 998 applies in Song-Beverly actions, we next consider whether it applies where the litigation is terminated by settlement.  We agree with the majority in *Madrigal*, *supra*, 90 Cal.App.5th 385, review granted, that it does.[3]

---

[3]      Plaintiff asks that we take judicial notice of (a) the Supreme Court's order granting review of *Madrigal*; and (b) a litany of documents filed in support of and in opposition to such review.  As to the former, we are obliged to know whether authority we rely upon is under review by the Supreme Court. (See Cal. Rules of Court, rule 8.1115(e).)  Judicial notice of *Madrigal*'s review status is therefore unnecessary.  We nevertheless grant plaintiff's request because it concerns a state record offered as evidence of its legal effect. (Evid. Code, § 452, subd. (d); *Linda Vista Village San Diego Homeowners Assn., Inc. v. Tecolote Investors, LLC* (2015) 234 Cal.App.4th 166, 185 ["[W]hen courts take judicial notice of the existence of court documents, the legal effect of the results reached in orders and judgments may be established."].)

As to the documents filed in support of and in opposition to review, plaintiff's request is denied.  Plaintiff offers these documents for the legal arguments and hearsay assertions contained therein.  Regarding the arguments in the *Madrigal* papers, plaintiff had a full opportunity to present his arguments

### a.   Nothing in the text of section 998 excludes cases that end in settlement

By its terms, section 998 cuts off the plaintiff's right to recover costs incurred after the date of a section 998 offer where (i) "an offer made by a defendant is not accepted"; and (ii) "the plaintiff fails to obtain a more favorable judgment or award." (*Id.*, subd. (c); see also *Mon Chong Loong Trading Corp. v. Superior Court* (2013) 218 Cal.App.4th 87, 94 (*Mon Chong*) ["By its plain language, it requires that the plaintiff who refused the reasonable settlement offer obtain a more favorable judgment or award in order to avoid [cost withholding or augmentation under section 998]."].)

The *Madrigal* majority explained that a defendant's valid section 998 offer imposes "a burden on the plaintiff" who rejects it—"the obligation to obtain a judgment more favorable than the unaccepted offer." (*Madrigal, supra,* 90 Cal.App.5th at p. 398, review granted.)  Whether the plaintiff met this burden is

in this court.  That similar arguments were made in another proceeding is not relevant to the disposition of this appeal.  (See *People v. McKinzie* (2012) 54 Cal.4th 1302, 1326 [court will only take judicial notice of relevant matter], overruled in part by *People v. Scott* (2015) 61 Cal.4th 363, 391; cf. *People v. Lamoureux* (2020) 57 Cal.App.5th 136, 144, fn. 5 [denying judicial notice of appellate briefing in appeal addressing related legal issue].)  Regarding purported evidence contained in the *Madrigal* papers, while we are permitted to take judicial notice of the existence of court documents, we cannot accept as true factual contentions contained therein.  (*Sosinsky v. Grant* (1992) 6 Cal.App.4th 1548, 1566 [" '[A] court cannot take judicial notice of hearsay allegations as being true, just because they are part of a court record or file.' "].)

assessed upon the termination of the litigation. (*Mon Chong*, *supra*, 218 Cal.App.4th at p. 93.)

Here, the litigation terminated by settlement, and the trial court declined to apply section 998 for that reason. Even though section 998 contains no express settlement exception, plaintiff contends the trial court was correct because section 998 does not apply to settlements "by its plain terms." We disagree.

Plaintiff's textual analysis relies on language in the operative subdivision (c)(1)[4] of section 998, as well as language in subdivisions (d) and (e). We address these in turn.

### i.      Section 998, subdivision (c)(1)

Section 998, subdivision (c)(1), provides that a plaintiff who rejects a reasonable offer of settlement and then fails to obtain a more favorable judgment is subject to certain burdens under the statute. (*Ibid*.) Plaintiff here argues that a plaintiff who settles postoffer does not "fail[] to obtain a more favorable judgment or award" for two reasons. First, he contends the act of settling "subsumes and extinguishes th[e] 998 offer" under the contract law doctrine of merger. Second, adopting the *Madrigal* concurring and dissenting opinion's understanding of the word "fail," he argues settlement cannot be a "failure" because it is "not defeat, loss, abandonment, or involuntarily falling short. It's a *compromise*, without winners or losers."

---

[4]      In his respondent brief, plaintiff cites section 998, subdivision (d) for language that also appears in subdivision (c)(1), but subdivision (d) does not, as plaintiff describes it, "penalize[] plaintiffs." Rather, it penalizes defendants. (§ 998, subd. (d).) Thus, we read plaintiff's citation to subdivision (d) as an intended reference to subdivision (c)(1), which does penalize plaintiffs.

15

Plaintiff's contract law argument fails because the doctrine of merger does not apply here.  The doctrine of merger in contract law affects the interpretation and enforcement of contracts by providing that a written agreement supersedes prior discussions, negotiations, and agreements.  (See generally *Bradford v. Southern California Petroleum Corp.* (1944) 62 Cal.App.2d 450, 461 ["As a general rule, all prior negotiations and stipulations concerning the subject matter of a contract are considered merged therein when the contract is executed."].)  This case does not present any dispute about the interpretation or enforceability of FCA's February 2018 section 998 offer.  To the extent it was not rejected, it expired 30 days after it was made under section 998, subdivision (b)(2).  FCA does not seek to enforce contract rights under the February 2018 offer.  The rights FCA now seeks to enforce are those arising under section 998 as a consequence of FCA making, and plaintiff *not* accepting, the offer.

As to whether voluntary settlement can be a " 'fail[ure] to obtain a more favorable judgment,' " we agree with the *Madrigal* majority the answer is yes, and that there is no ambiguity in the term " 'fail[ure].' " (*Madrigal, supra,* 90 Cal.App.5th at p. 407, review granted.)  "The phrase 'fail[ure] to obtain a more favorable judgment' means what it says—the plaintiff fails to, or does not, meet its obligation at the conclusion of the lawsuit to obtain a judgment more favorable than the amount stated in the offer to compromise." (*Ibid.*)

Here, when plaintiff declined FCA's February 2018 offer, he did so because he viewed it as "insufficient in amount."  Put another way, he was holding out for more.  Setting aside the claimed value in other aspects of the settlement relative to FCA's February 2018 offer, discussed at part 5.c., *post*, he did not get

16

more.  This is a failure under any common understanding of the word "fail."

### ii.        Section 998, subdivisions (e) and (f)

Section 998, subdivision (e) provides, in relevant part:  "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the costs under [section 998], from the time of the offer, shall be deducted from any damages awarded in favor of the plaintiff."

Plaintiff argues the word "damages" in subdivision (e) excludes from section 998's coverage cases that end in settlement because a plaintiff who settles receives no damages award.  In support, he points to subdivision (f) deeming "[a]ny judgment or award [entered pursuant to section 998] a *compromise* settlement," as opposed to an adjudication, and contends only adjudicated judgments, and not judgments entered by settlement, can result in damages.

Plaintiff's reading of section 998, subdivision (e) misses a key point.  Subdivision (e) says if a plaintiff fails to get a result more favorable than the defendant's offer, then the defendant's costs will be offset from "any damages awarded in favor of the plaintiff."  (§ 998, subd. (e).)  The word "any" before "damages awarded" embraces the possibility that there will be no damages awarded.  (See *Colombrito v. Kelly* (2d Cir. 1985) 764 F.2d 122, 129 [phrase " 'any . . . fees awarded to the defendants' " embraced "possibility that no fee award might be made"]; *Pardini v. Allegheny Intermediate Unit* (3d Cir. 2008) 524 F.3d 419, 425 [the word "any" in order directing court to " 'determine . . . the amount of any attorney[] fees' " expressed that an attorney fee award was merely possible; not certain].)  Section 998 may operate in the absence of a damages award, as may be the case where a later

17

settlement terminates the litigation or, as was the case in *Mon Chong*, the case ended in voluntary dismissal. (See *Mon Chong*, *supra*, 218 Cal.App.4th at p. 93.)

We are not persuaded by plaintiff's argument that the "plain terms" of section 998 exclude cases that end in settlement. We think a plain reading of section 998, subdivision (c)(1) compels the conclusion that it applies to any litigation that terminates with the plaintiff getting less than he would have if he had accepted the defendant's earlier section 998 offer. (*Madrigal*, *supra*, 90 Cal.App.5th at p. 399, review granted ["By its plain terms, section 998 does not exclude cases that end in settlement, or limit its cost-shifting provisions to cases that end in a judgment after trial . . . ."].)

Because we find no ambiguity in the relevant terms of section 998, we will not resort to legislative history to divine a different meaning. (*Rider v. City of San Diego* (1998) 18 Cal.4th 1035, 1053 [where statute is unambiguous, "the legislative history . . . is irrelevant"].) We deny plaintiff's motion for judicial notice of legislative history materials on that basis. (See *Hughes Electronics Corp. v. Citibank Delaware* (2004) 120 Cal.App.4th 251, 266, fn. 13 ["As a general matter, judicial notice is not taken of matters irrelevant to the dispositive points on appeal."].) The legislative history plaintiff asks us to judicially notice is also irrelevant because it does not disclose any legislative intent to exclude settlements from section 998.

> **b. Applying section 998, subdivision (c)(1) to litigation that terminates in settlement does not yield absurd results**

Where, as here, the plain terms of section 998 do not exclude litigation that ends in settlement, we must apply the

18

statute as written unless doing so would yield absurd results. (See, e.g., *Cassel v. Superior Court* (2011) 51 Cal.4th 113, 119; *Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1131.) To determine whether a possible result is absurd, we must consider the apparent purpose of the statute. (Cf. *Coalition of Concerned Communities, Inc. v. City of Los Angeles* (2004) 34 Cal.4th 733, 737 [absurdities to be avoided are consequences not intended by the Legislature].)

"[T]he policy behind section 998, subdivision (c) . . . is plain. It is to encourage settlement by providing a strong financial disincentive to a party—whether it be a plaintiff or a defendant— who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer. (This is the stick. The carrot is that by awarding costs to the putative settler the statute provides a financial incentive to make reasonable settlement offers.)" (*Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 804 (*Bank of San Pedro*), superseded by statute on another ground as stated in *Quiles v. Parent* (2017) 10 Cal.App.5th 130, 144.) By this carrot-and-stick approach, the statute "encourage[s] both the making and the acceptance of reasonable settlement offers." (*Scott*, *supra*, 20 Cal.4th at p. 1114.)

Though promoting settlements before trial is paramount because of the "time delays and economic waste" trials entail (*Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1019 (*Martinez*)), "section 998's purpose is also to encourage *early* settlement" (*id.* at p. 1024, fn. 8, italics added). All phases of litigation have costs. The earlier reasonable settlement offers are made and accepted, the less the costs incurred.

19

Plaintiff offers a litany of policy concerns and supposed unintended consequences of a plain reading of section 998, subdivision (c)(1), but only one rises to the level of a truly absurd result. According to plaintiff, applying section 998 to litigation that ends in settlement would make settlement after an unaccepted section 998 offer "all but impossible." If that were true, it would indeed be an absurd result, but we see things quite differently.

We disagree with plaintiff's suggestion that a plaintiff who does not accept a section 998 offer must litigate his case to conclusion in order to satisfy his burden of obtaining a "judgment or award" more favorable than the settlement offer. "[T]he term 'judgment' in section 998 is meant to include its functional equivalents, such as dismissal of a case with prejudice" or other final determination of the parties' rights. (*Madrigal*, *supra*, 90 Cal.App.5th at p. 400; see also *id.* at pp. 401-402, review granted.) Thus, where a defendant's section 998 offer goes unaccepted and the litigation later concludes in a settlement, the proper inquiry under section 998 is whether the final settlement is more favorable than the earlier section 998 offer. (*Madrigal,* at pp. 400-401.)

Although this rule was first definitively announced in *Madrigal*, it is not so novel as plaintiff claims. The word "judgment" in section 998 has long been interpreted far more broadly than an adjudicated judgment or award. The court in *Goodstein v. Bank of San Pedro* (1994) 27 Cal.App.4th 899 (*Goodstein*) recognized that "judgment" within the meaning of section 998, subdivision (b) embraced an offer proposing a voluntary dismissal with prejudice. (*Goodstein,* at p. 906.) It explained, "[t]he word 'judgment' in . . . section 998 indicates that

20

the statute contemplates that an offer to compromise which is accepted will result in the final disposition of the underlying lawsuit; the statute does not indicate any intent to limit the terms of the compromise settlement to the type of final disposition." (*Ibid.*) Our Supreme Court endorsed this flexible interpretation in *DeSaulles v. Community Hospital of Monterey Peninsula* (2016) 62 Cal.4th 1140, 1155. The presumption that a word carries a consistent meaning throughout the statute in which it appears is "especially apt" for interpreting section 998 because subdivision (c)(1) "requires a comparison between the terms and conditions of the 'judgment' proposed [pursuant to subdivision (b)] and the 'judgment' ultimately obtained by plaintiffs." (*Madrigal, supra,* 90 Cal.App.5th at p. 400, review granted.)

Plaintiff's other policy arguments go to the wisdom of the statute as written but do not describe any other potential absurdity. " 'If [a] construction does not result in patently absurd results, we may not construe a statute contrary to its plain language and ostensible intent merely because we disagree with the wisdom thereof.' " (*Fireman's Fund Ins. Co. v. Superior Court* (2011) 196 Cal.App.4th 1263, 1280.) In any event, we think plaintiff's concerns are overblown.

Plaintiff urges that applying section 998, subdivision (c)(1) to litigation that ends in settlement would, among other things, create obstacles to settlement by introducing a new cost variable to the equation; "spawn massive amounts of complicated post-settlement litigation"; incentivize defendants to make early, "low ball" offers; and generally "penaliz[e] a plaintiff for settling."

First, to state the obvious, parties are free to settle on whatever terms they want. In this case, the terms included

21

deferring resolution of plaintiff's entitlement to fees to the court if no consensual resolution could be reached. The parties agreed FCA would retain "any argument or objection to the fees and costs sought by Plaintiff." They did not have to settle on these terms. They could have settled the cost issue together with the underlying claims. This would have eliminated the need for any motions to the court and for this appeal.

We further reject plaintiff's contention that requiring the parties to account for the effect of section 998, subdivision (c)(1) is an insurmountable obstacle to settlement. Settlement negotiations require parties, and their attorneys, to understand their prospects for recovery after litigation and the risks and costs of continued litigation. Once a plaintiff has declined a defendant's section 998 offer, the calculus necessarily changes. This is by design. Again, section 998 "provid[es] a strong financial disincentive to a party . . . who fails to achieve a better result than that party could have achieved by accepting his or her opponent's settlement offer." (*Bank of San Pedro, supra,* 3 Cal.4th at p. 804.)

We fail to see how it would be desirable to deprive a defendant of the benefits of having made an early, reasonable settlement offer if the case later resolves by settlement. Doing so would encourage defendants to go to trial rather than settle because only by litigation could they qualify for statutory benefits they sought in making the unaccepted section 998 offer. (*Madrigal, supra,* 90 Cal.App.5th at p. 405, review granted.) In negotiating settlements after an earlier section 998 offer goes unaccepted, parties can and must account for the impact the unaccepted section 998 offer has on their prospects in litigation and thus what constitute reasonable settlement terms.

22

(Cf. *Madrigal,* at p. 405 ["[A] plaintiff need only factor any operative section 998 offer into a comprehensive settlement, and either try to negotiate a fixed amount of costs or attorney fees, or bargain for a waiver of any rights under section 998 from the defendant."].)

As to plaintiff's concerns that applying section 998 as written would force plaintiffs to "accept measly offers that have little connection to the case's actual value," case law has already addressed this. A settlement offer that is not made in good faith, including because it is not reasonable, does not trigger application of section 998. (*Licudine, supra*, 30 Cal.App.5th at p. 924.) As plaintiff acknowledges, whether a particular offer is made in good faith depends, in part, on "whether the offeree was given a fair opportunity to intelligently evaluate the offer." (*Najera v. Huerta* (2011) 191 Cal.App.4th 872, 878.) Courts have discretion to disregard section 998 offers made when the parties have unequal access to information and the offeror resists the offeree's efforts to become educated about the basis for the offer. (See *Najera,* at pp. 878-879; see also *Licudine*, at pp. 924-926.)

Finally, we reject plaintiff's refrain that applying section 998, subdivision (c)(1) in these circumstances would "penalize" plaintiffs for settling in contravention of the Legislature's intent. The only penalty under subdivision (c)(1) is for *not* settling on reasonable terms offered earlier and failing later to obtain a more favorable result. This penalty is central to advancing the statutory purpose. (See *Bank of San Pedro*, *supra*, 3 Cal.4th at p. 804.) Applying it in accordance with its terms, as we do here, only furthers such purpose.

23

## 4. Section 998 Makes No Exception for an Intervening Change in Law

The trial court held section 998 was inapplicable as a matter of law because *Niedermeier* reduced the most plaintiff might have recovered at trial. Without citation to authority, the court stated: "the earlier, larger offer was not accepted by Plaintiff reasonably based on existing case law. Section 998 was not meant to penalize plaintiffs for engaging in good faith negotiations to settle based on the evolving information and case law before them."

Nothing in the text of section 998 says a change in the law relieves a nonaccepting offeree of his burden to obtain a more favorable result to avoid the statute's adverse consequences. Therefore, we again must consider whether adding a change-in-the-law exception to the statutory text is necessary to avoid absurd results. We conclude it is not.

The offeree who ignores section 998's encouragement to accept a reasonable offer assumes the risk of not obtaining a more favorable result. (*Madrigal*, *supra*, 90 Cal.App.5th at p. 398, review granted ["a burden of sorts arises for a plaintiff who rejects a valid offer to compromise under section 998—the obligation to obtain a judgment more favorable than the unaccepted offer"].) The obstacles to obtaining a more favorable result can come from a variety of sources, expected and unexpected. As plaintiff notes, "[n]ew post-offer facts or post-offer authorities may change the calculus of the case . . . [o]r the plaintiff may be diagnosed with a grave illness that makes the prospect of drawn-out litigation a taller task." Even without such unexpected changes in circumstances, trials are inherently risky. "[T]he vagaries of litigation, including the possibility of

24

juror misconduct or reversal on appeal, which increases the opposing party's costs, are part of the risk inherent in rejecting a section 998 offer." (*Saakyan v. Modern Auto, Inc.* (2002) 103 Cal.App.4th 383, 392.)

We see no reason to insulate a nonaccepting offeree from one form of risk while subjecting him to all the others when the Legislature did not see fit to do so. Indeed, risk is the animating force behind section 998. An offeree who refuses a reasonable offer both assumes the risk of failing to obtain a more favorable result and is subjected to increased stakes in the form of added costs. Limiting the risk an offeree assumes when choosing to pursue a more favorable result goes *against* the statutory design and purpose.

Here, plaintiff refused FCA's offer that was more than 83 percent of the absolute most he could have hoped to get at trial at the time.[5] He then continued to litigate for almost three years. A lot can change in the law in three years. Again, nothing in the statute excuses an offeree from considering the risk of changes in the legal landscape when evaluating a reasonable settlement offer made pursuant to section 998.

Nevertheless, plaintiff claims caselaw exempts him from operation of section 998 "for accepting less based on *new factual and legal developments* that take place *only after* the offer was made." In support, he discusses only *Guerrero v. Rodan Termite*

---

[5] Plaintiff's trial counsel described FCA's February 2018 offer in Song-Beverly "lingo" as a "2 1/2[x]" offer, meaning purchase price restitution plus 150 percent of the purchase price as a civil penalty. As civil penalties are capped at double the actual damages, a "3x" award is the best plaintiff could have done at trial.

*Control, Inc.* (2008) 163 Cal.App.4th 1435 (*Guerrero*). *Guerrero* is easily distinguishable.

     *Guerrero* involved a homebuyer's claims against the seller, the dual real estate agent for both buyer and seller, and a termite inspector relating to conditions discovered in the home after the close of escrow. The termite inspector made a $5,000 section 998 offer, which the buyer declined. (*Guerrero*, *supra*, 163 Cal.App.4th at p. 1438.) The buyer later settled with the real estate agent for $34,000. The trial court approved it as a good faith settlement pursuant to section 877. The buyer then proceeded to trial against the termite inspector and obtained a verdict in the amount of $15,600. After offsetting the settlement with the real estate agent, the trial court entered judgment for $0. (*Guerrero,* at p. 1439.)

     The termite inspector argued that it was entitled to cost shifting under section 998 because its $5,000 offer was more than the $0 judgment after trial. (*Guerrero*, *supra*, 163 Cal.App.4th at p. 1439.) The *Guerrero* court disagreed. Observing that the buyer both recovered more and obtained a verdict in excess of the offer amount, the court found "no reason to give [the termite inspector] a windfall benefit because [the real estate agent] later decided to settle for an amount that offset [the buyer's] verdict against [the termite inspector]." (*Id*. at p. 1441.)

     *Guerrero* might have been of use to plaintiff if his January 2021 settlement offer, when added to the amount he received in credit for trading in his Jeep, exceeded FCA's February 2018 offer. Under those circumstances, plaintiff might have been able to argue that he, like the plaintiff in *Guerrero*, achieved an aggregate recovery that exceeded what FCA offered. But he only got $13,000 in trade for the Jeep, and when added to the

26

$125,000 FCA ultimately paid in settlement, plaintiff still recovered about $5,500 less than the $143,498 FCA offered three years earlier.

Plaintiff asks us to excuse, as the trial court did, the shortfall in his ultimate recovery because *Niedermeier* made it impossible to obtain the recovery he was holding out for when he declined to accept FCA's February 2018 offer. Plaintiff simply offers no authority that failing to accept an earlier, more favorable settlement is excused when the omnipresent risk of an adverse change in law manifests to reduce ultimate recovery.

We note the concurring and dissenting opinion in *Madrigal* considered it unfair for section 998 to operate in this very context. (See *Madrigal*, *supra*, 90 Cal.App.5th at p. 423 (conc. & dis. opn. of Robie, Acting P.J. ["Under the majority's interpretation, if a plaintiff rejected a reasonable section 998 offer prior to *Niedermeier* and later agreed to settle for a lesser amount because of [*Niedermeier*], the cost-shifting provision of section 998(c)(1) would necessarily apply to the plaintiff's detriment. . . . Should the plaintiff be penalized due to a subsequent change in the law? I believe not." (Citation omitted.)].)

These subjective policy judgments are for the Legislature to resolve, not us. The Legislature made no subsequent-change-in-law exception to section 998's "more favorable" requirement. We find nothing absurd in letting an offeree who does not accept a settlement that was reasonable when made bear the risk of being unable to top it due to such a change. Again, section 998 is designed to "encourage both the making and the acceptance of reasonable settlement offers." (*Scott*, *supra*, 20 Cal.4th at

27

p. 1114.)  The greater risk the offeree bears in rejecting it, the more likely he is to accept a reasonable settlement offer.

**5.  Was FCA's February 2018 Offer More Favorable Than the Ultimate Resolution of the Case?**

Before we address arguments about whether the ultimate result was more favorable than FCA's February 2018 offer, we must consider whether the February 2018 offer was valid and whether it is reasonably susceptible to valuation.  (See *Fassberg, supra*, 152 Cal.App.4th at p. 766 [where section 998 offer's nonmonetary terms make it "exceedingly difficult or impossible to determine the value of the offer to the plaintiff," courts "should conclude that the offer is not sufficiently specific or certain to determine its value and deny cost shifting"].)

**a.  FCA's February 2018 offer was valid**

The trial court expressly declined to decide whether FCA's February 2018 offer was valid. We have discretion to address the question because our review is independent.  (*Roberts v. Los Angeles County Bar Assn.* (2003) 105 Cal.App.4th 604, 615-616 ["[W]e can address that question as it is subject to independent review."]; *Covert, supra*, 73 Cal.App.5th at p. 832 [" ' "We independently review whether a section 998 settlement offer was valid." ' "].)

FCA's February 2018 offer was facially valid because it complied with the statutory requirements, and its terms were sufficiently specific to permit plaintiff to make an informed decision about whether to accept it.  (*Perez, supra*, 206 Cal.App.4th at p. 425.)  It was in writing, provided for dismissal with prejudice (which is equivalent to a judgment (*Goodstein, supra*, 27 Cal.App.4th at p. 905)), and had a space for plaintiff to accept the offer (see § 998, subd. (b)).  Moreover, its economic

28

terms were unambiguous. Plaintiff would return the Jeep to FCA, FCA would pay plaintiff a sum certain, and FCA would pay plaintiff's reasonable costs, expenses and attorney fees pursuant to Civil Code section 1794, subdivision (d).

Plaintiff argued in the trial court that FCA's February 2018 offer was invalid because it (i) called for dismissal of the action rather than entry of judgment and yet specified no time for payment or for return of the vehicle; (ii) failed to address interest; and (iii) "included a *Goodstein* provision." To the extent good faith is properly considered essential to the validity of an offer (see, e.g., *Licudine*, *supra*, 30 Cal.App.5th at p. 924 ["[a] 998 offer is valid only if it is made in 'good faith' "]), plaintiff (who bore the burden to show its absence (*id.* at p. 926)) did not argue good faith was lacking. Of particular note, he did not argue the offer was not reasonable when made.

Plaintiff's undeveloped contentions about the validity of FCA's February 2018 offer do not persuade us that it was invalid. The court in *Covert* rejected similar arguments in deeming valid an offer by FCA containing terms virtually identical to those involved in this case. (See *Covert*, *supra*, 73 Cal.App.5th at pp. 829, 838-841.)

b.      **The nonmonetary terms of FCA's February 2018 offer and later January 2021 settlement did not render them incomparable**

Plaintiff argues "[i]t's impossible to say whether the ultimate settlement was more favorable than the rejected 998 offers given its nonmonetary terms." He says the following nonmonetary terms in the settlement, that were not in FCA's February 2018 offer, have an unquantifiable value: (i) FCA was obligated to pay within 60 days; (ii) plaintiff was entitled to

29

interest in the event of late payment; (iii) plaintiff's dismissal obligation was conditioned on receipt and clearance of all funds; (iv) the trial court retained jurisdiction to enforce the settlement; and (v) there was no prohibition on entry of judgment.

"A judgment is more favorable to the plaintiff than a prior settlement offer only if the value of the plaintiff's recovery in the judgment, exclusive of the plaintiff's postoffer costs, exceeds the value of the offer." (*Fassberg, supra*, 152 Cal.App.4th at p. 764.) Plaintiff is correct that nonmonetary terms may have material value that must be accounted for in the comparison. Section 998 "does not describe the 'offer' in monetary terms nor authorize cost-shifting every time the *monetary* value of the damage award is less than the *monetary* 'term' of the defendant's statutory offer. Instead an 'offer' includes all its terms and conditions and must be evaluated in the light of all those terms and conditions." (*Valentino v. Elliott Sav-On Gas, Inc.* (1988) 201 Cal.App.3d 692, 697 (*Valentino*).) If the nonmonetary terms make it "exceedingly difficult or impossible to determine the value of the offer to the plaintiff[,] . . . a court should not undertake extraordinary efforts to attempt to determine whether the judgment is more favorable to the plaintiff" but should instead "conclude that the offer is not sufficiently specific or certain to determine its value and deny cost shifting . . . ." (*Fassberg, supra*, 152 Cal.App.4th at p. 766.)

We think the differences between FCA's February 2018 offer and the ultimate January 2021 settlement are immaterial to comparing the two offers as a matter of law. Even if this were not the case, as discussed in part 5.c., *post*, they are immaterial under the facts of this case.

The archetypal application of section 998 entails a comparison between, on the one hand, a settlement proposal to

30

terminate litigation made any time between the commencement of the case and 10 days before trial; and, on the other hand, a judgment after trial. There are inherent differences between these alternative resolutions that must be ignored for section 998 to maintain its vitality. For example, in *American Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton* (2002) 96 Cal.App.4th 1017, 1030 (*American Airlines*), the defendant law firm made a section 998 offer to pay the plaintiff, its former client, $59,200 in exchange for dismissal with prejudice. "The offer did not provide for entry of judgment . . . ." (*American Airlines,* at p. 1030.) The case went to trial and the jury awarded plaintiff just $8,174 in damages. (*Id.* at p. 1031.) In opposing cost shifting under section 998, the plaintiff argued its litigation objective "was to obtain a declaration of [the defendant's] wrongdoing, rather than to obtain a monetary judgment." (*American Airlines*, at p. 1056.) The court held that allowing plaintiffs to argue "any judgment declaring wrongdoing by the defendant is worth more than the monetary amount offered in settlement" would vitiate section 998. (*American Airlines,* at p. 1056.)

We think the same must be true of the settlement boilerplate plaintiff relies on here to distinguish between FCA's February 2018 offer and the ultimate January 2021 settlement. Settlements frequently contain terms governing basic implementation—such as outside performance dates, sequence of performance, and enforcement features—that judgments do not. Judgments are governed by their own set of rules such as interest, deadlines for payment, and rights of enforcement. (See, e.g., § 685.010 [statutory postjudgment interest]; § 683.010 [subject to exceptions, judgment immediately enforceable];

31

§§ 695.010-695.070 [rules governing enforcement of money judgments].)

Settlement permits the parties to agree to convenient implementation terms other than those provided by statute to enforce a judgment. That does not make it "impossible" to compare a settlement with a judgment or other resolution. If section 998 required comparison of the relative value of rights in the event of a hypothetical default in payment under the settlement agreement, that would deprive section 998 offerees of the flexibility to propose alternative implementation terms in settlement offers. Courts have long protected the flexibility to propose alternative implementation terms while still preserving rights under section 998. (See, e.g., *Goodstein*, *supra*, 27 Cal.App.4th at p. 905 [payment in exchange for dismissal qualifies as "judgment" for purposes of § 998]; *American Airlines*, *supra*, 96 Cal.App.4th at p. 1056 [declining to value benefits of actual judgment in comparing to section 998 offer of payment in exchange for dismissal].) We reject plaintiff's arguments that would undermine this.

Plaintiff cites two cases in which nonmonetary terms rendered the settlement offer incomparable to the ultimate resolution. These cases are *Valentino*, *supra*, 201 Cal.App.3d 692 and *Barella v. Exchange Bank* (2000) 84 Cal.App.4th 793. In *Valentino*, the nonmonetary term was a release in the section 998 offer that encompassed claims not asserted in the lawsuit. (*Valentino*, at p. 699.) The *Valentino* court recognized these claims had inherent, material value but to ascertain that value would require "pure guesswork." (*Id.* at p. 700.) Thus, they "introduced an imponderable which ma[de] it impractical if not impossible to accurately and fairly evaluate the offer." (*Id.* at

32

p. 699.)  In *Barella*, a defamation action, the nonmonetary term was a confidentiality provision in the section 998 offer.  Giving primary consideration to the principle "that our '[s]ociety has a pervasive and strong interest in preventing and redressing attacks upon reputation,' " the *Barella* court held that "a settlement offer that by its terms cannot be made public[] cannot be effective under section 998." (*Barella*, at p. 801.)  It reasoned that "the value to a particular plaintiff of public vindication (or, conversely, the negative value of confidentiality) is so highly subjective and elusive that no court can determine its monetary worth." (*Ibid.*)

Notably, each of these cases concerned substantive settlement terms—a release of unmade claims or a confidentiality agreement—not terms governing basic implementation.  We think terms that do nothing more than ensure reasonably prompt performance, like those involved here, must be disregarded for purposes of comparing offers and outcomes under section 998, subdivision (c)(1).  To ascribe such terms value would be to presume parties offering to settle would not have followed through if their offers were accepted.  This is contrary to the premise that underlies section 998:  that if the offeree had accepted the offer, the litigation would have ended.  Moreover, disregarding the basic implementation terms in this case for purposes of performing the section 998, subdivision (c)(1) comparison removes uncertainty from the section 998 process because it allows parties to focus on substantive terms in exchanging offers without fear that any nonsubstantive deviation from a prior offer would affect their rights under section 998 (or inserting nonsubstantive terms to evade the consequences of having rejected an earlier reasonable offer). (See *Martinez*,

33

*supra*, 56 Cal.4th at p. 1021 ["[A] court should assess whether the particular application injects uncertainty into the section 998 process. If a proposed rule would encourage gamesmanship or spawn disputes over the operation of section 998, rejection of the rule is appropriate."].)

Disregarding the implementation and default terms in the final settlement, plaintiff's "later, smaller award" he achieved through his January 2021 settlement offer was not more favorable than the "larger settlement award" FCA offered in February 2018 as a matter of law.

> **c. FCA's February 2018 offer was more favorable even when accounting for the ultimate January 2021 settlement's additional terms**

Even if we agreed with plaintiff that we need to account for the value of the final January 2021 settlement's implementation and default terms, there is no basis to conclude that their value exceeds the shortfall between FCA's February 2018 "larger settlement award" and the "later, smaller award" he proposed and FCA accepted.

Plaintiff touts the additional terms as "ensur[ing] quick and enforceable payment." But if we are to value how promptly plaintiff was entitled to be paid under the ultimate January 2021 settlement, we must consider when he might have been paid under FCA's February 2018 offer. And when we consider relative enforceability, we must consider the relevant rights, incentives, and burdens under each.

As to prompt payment, the final January 2021 settlement's provision for payment within 60 days was not better than FCA's February 2018 offer. That offer lacked a term specifying the timing of payment. As a result, it was due immediately and FCA

34

had a reasonable time in which to pay it upon demand. (Civ. Code, § 1657; *Wilson v. Zorb* (1936) 15 Cal.App.2d 526, 535 [agreement to pay money without time provision entitled promisee to make a demand for payment and gave promisor "a reasonable time thereafter within which to make payment"]; *Integrated, Inc. v. Alec Fergusson Electrical Contractor* (1967) 250 Cal.App.2d 287, 295 [where payment is due immediately, payor must be allowed "such reasonable time as may be necessary to process payment"].) Although what is "reasonable" is a question of fact, it is inconceivable that, if plaintiff had accepted FCA's February 2018 offer, he would have been paid later than he was under the January 2021 settlement.[6] Indeed, FCA had a strong incentive to pay the settlement promptly. Under the terms of the agreement, FCA was liable for plaintiff's attorney fees to the extent provided in Civil Code section 1794, subdivision (d), and plaintiff controlled the timing of dismissal. "These provisions created a significant disincentive for FCA to engage in gamesmanship in delaying payment." (*Covert, supra,* 73 Cal.App.5th at p. 840.)

We likewise perceive no value in the provisions addressing plaintiff's rights in the event of FCA's default in payment. Had plaintiff accepted FCA's February 2018 offer and FCA then refused to pay, plaintiff, who presumably would not have dismissed his action at that point, would have been able to seek enforcement of the agreement from the court without filing a new action. Again, whatever costs he might have reasonably incurred

---

[6]    Plaintiff requests judicial notice of evidence to show FCA has not always paid settlements promptly. We deny this request of materials not before the trial court as irrelevant. (*Covert, supra,* 73 Cal.App.5th at p. 831, fn. 8.)

in that effort would have been recoverable from FCA pursuant to Civil Code section 1794, subdivision (d) and the terms of the settlement.  In short, FCA would have borne the cost of any enforcement, relieving plaintiff of any burden of undertaking it.

## DISPOSITION

The judgment of the trial court is reversed.  The matter is remanded to the trial court with instructions to enter a new judgment exclusive of any costs, as such term is used in section 1032, subdivision (b), incurred by plaintiff after February 16, 2018 (the date of FCA's February 2018 section 998 offer).  FCA to recover costs on appeal.


GRIMES, Acting P. J.


I CONCUR:


WILEY, J.


36

**VIRAMONTES J., Concurring and Dissenting.**

I agree with the majority that Code of Civil Procedure section 998, subdivision (c)(1)'s (section 998(c)(1)) mandatory cost-shifting provision applies to awards in favor of buyers in Song-Beverly actions under Civil Code section 1794, subdivision (d). I do not agree, however, that section 998(c)(1)'s cost-shifting provision applies to a litigation terminated by settlement. I believe the language of section 998(c)(1) is ambiguous as to its applicability in the settlement context. However, after examining the legislative history and purpose behind the statute as discussed in the concurring and dissenting opinion in *Madrigal v. Hyundai Motor America* (2023) 90 Cal.App.5th 385 (*Madrigal*), I find that section 998(c)(1)'s mandatory cost-shifting provision should not apply here where the litigation was terminated by settlement. Therefore, I respectfully dissent.

Section 998(c)(1) provides, "If an offer made by a defendant is not accepted and the plaintiff fails to obtain a more favorable judgment or award, the plaintiff shall not recover his or her postoffer costs and shall pay the defendant's costs from the time of the offer. In addition, in any action or proceeding other than an eminent domain action, the court or arbitrator, in its discretion, may require the plaintiff to pay a reasonable sum to cover postoffer costs of the services of expert witnesses, who are not regular employees of any party, actually incurred and reasonably necessary in either, or both, preparation for trial or arbitration, or during trial or arbitration, of the case by the defendant."

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] The well-

1

established rules for performing this task require us to begin by examining the statutory language, giving it a plain and commonsense meaning.  [Citation.]  We do not, however, consider the statutory language in isolation; rather, we look to the statute's entire substance in order to determine its scope and purposes.  [Citation.]  That is, we construe the words in question in context, keeping in mind the statute's nature and obvious purposes.  [Citation.]  We must harmonize the statute's various parts by considering it in the context of the statutory framework as a whole.  [Citation.]  If the statutory language is unambiguous, then its plain meaning controls.  If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history." (*Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1106–1107.)

Here, the majority adopted the reasoning of the majority in *Madrigal*, which found no ambiguity in the phrase "fails to obtain a more favorable judgment."  (*Madrigal*, *supra*, 90 Cal.App.5th at p. 407.)  "The phrase 'fails to obtain a more favorable judgment' means what it says—the plaintiff fails to, or does not, meet its obligation at the conclusion of the lawsuit to obtain a judgment more favorable than the amount stated in the offer to compromise."  (*Ibid*.)  Thus, according to the majority, there is no settlement exception to section 998(c)(1)—a settlement for less than the unaccepted section 998 offer is a failure to obtain a more favorable judgment.  While the majority's reading is one interpretation supported by the plain language of section 998(c)(1), it is not the only one.

2

As the concurring and dissenting opinion in *Madrigal* explained, we must " 'give effect and significance to every word and phrase of [the] statute,' including section 998(c)(1)'s directive that it will apply 'when the plaintiff *fails to obtain* a judgment more favorable than a previously rejected or withdrawn offer to compromise.' " (*Madrigal, supra,* 90 Cal.App.5th at p. 413, original italics.) "The plain meaning of 'fail' and the association of that word with a result obtained by the plaintiff indicates section 998(c)(1)'s cost-shifting provision applies only when the plaintiff's *unilateral* action results in a judgment less favorable than a previously rejected or withdrawn offer to compromise." (*Madrigal,* at p. 413.)

I agree with the concurring and dissenting opinion in *Madrigal* that the plain language supports an interpretation precluding application of section 998(c)(1)'s cost-shifting provision to litigations terminated via settlement. This is because a settlement is not a failure of either party, rather, it is a voluntary resolution of a dispute that does not necessarily reflect a party's liability or nonliability or the merits of action. (See *Ludwig v. Superior Court* (1995) 37 Cal.App.4th 8, 27.) Further, settlements are not always "functionally the equivalent of judgments, such that reference to one infers or includes the other." (*Mares v. Baughman* (2001) 92 Cal.App.4th 672, 676.) "While either will generally bring an end to a lawsuit, a settlement is an agreement between the parties to a dispute regarding how that dispute will be resolved. On the other hand, a judgment in a civil matter is the imposition of a resolution on the parties to a dispute as determined by a court. [Citation.] A judgment has implications that a settlement does not. [Citations.] Further, the mere fact that a party to a settlement

3

may seek to transform it into a judgment for enforcement purposes [citation] does not mean that the one is *necessarily* the equivalent of the other." (*Id.* at pp. 676–677.) Thus, " 'fails to obtain' may reasonably be understood to refer to the result flowing from the plaintiff's *unilateral* action rather than a result flowing from a compromise between opposing parties." (*Madrigal, supra,* 90 Cal.App.5th at p. 414.)

While I do not go as far as my dissenting colleague in *Madrigal* to conclude the use of the words "fails to obtain" gives section 998(c)(1) only one possible meaning (*Madrigal, supra,* 90 Cal.App.5th at p. 410), I find, at the very least, the statute's use of those words calls into question whether a settlement for less than the unaccepted offer equates to a failure to obtain a more favorable judgment under section 998(c)(1).

Because section 998(c)(1) is equally susceptible to the competing interpretations as discussed in *Madrigal,* I find it necessary to examine the legislative history and purpose behind section 998(c)(1) to determine whether it applies to a mutually agreed-upon settlement. (*California Forestry Assn. v. California Fish & Game Commission* (2007) 156 Cal.App.4th 1535, 1545.)

Although nothing in the legislative history definitively establishes whether or not a settlement for less than the unaccepted offer is a failure to obtain a more favorable judgment under section 998(c)(1), I find to the extent the legislative history supports either interpretation, it tends to support the conclusion that the Legislature did not intend to have section 998(c)(1) apply to the circumstances before us where the litigation ends in a mutually agreed-upon settlement. (See *Madrigal, supra,* 90 Cal.App.5th at p. 415.)

Section 998(c)(1)'s cost-shifting provision has been a part of California law since 1851. " 'The section was substantially the same as the New York Code of Procedure, section 385[,] which was derived from the Field Code (First Rep. [of] the Com[rs.]. on Prac. & Pleadings, Code Proc., § 338 (1848)) except that the New York provision allowed ten days for acceptance, while the California provision allowed five.' " (*Madrigal*, *supra*, 90 Cal.App.5th 385 at pp. 415–416, citing *T.M. Cobb Co. v. Superior Court* (1984) 36 Cal.3d 273, 286 (dis. opn. of Broussard, J.).) "The Field Code explained the intended offer to compromise language, as adopted in California in section 998's predecessor and which included the 'fails to obtain' language as it remains in section 998 today, was intended to ensure that, when a plaintiff rejects an offer to compromise, 'but carries on the action, in order to recover a greater amount, he does it at the hazard of paying costs to the defendant, if he shall fail to establish a greater claim.' [Citation.] The 'principal benefit hoped' for was 'to save the time of courts and witnesses, and the expense to parties, in proving the amount of damages, in case the right to recover in the action, shall be established.' " (*Madrigal*, at p. 416, italics omitted.)

Thus, the early legislative history of section 998(c)(1) reflects a legislative intent to conserve precious court resources by incentivizing settlements that would circumvent a full adjudication of the merits necessary to establish a relatively less valuable claim. It follows then that section 998(c)(1) would not apply to litigations terminated by settlement because a settlement does not legally establish anything regarding the underlying claim. (*Madrigal*, *supra*, 90 Cal.App.5th at p. 416.) "[A] settlement does not result in a winner or a loser." (*Id.* at p. 414.) And "the fact of settlement says nothing about a

5

defendant's liability, his nonliability, his freedom from fault, or his culpability." (*Zalta v. Billips* (1978) 81 Cal.App.3d 183, 190.)

I also find telling our Legislature's amendment of section 998 under Senate Bill No. 73 (1997–1998 Reg. Sess.), which expanded the statute "to apply to arbitration proceedings in the same way it applies to judicial proceedings, and amended the cost-shifting provision to clarify that postoffer costs are excluded for purposes of determining if the plaintiff obtained a judgment more favorable than a previously rejected section 998 offer." (*Madrigal*, *supra*, 90 Cal.App.5th at pp. 416–417, citing Stats. 1997, ch. 892, § 1, pp. 6389–6391.)

The Legislature's use of the term "award" shows an intent to apply section 998(c)(1)'s cost-shifting provision only in those instances where the litigation ends after an adjudication. An arbitration award, which is confirmed and becomes a judgment (Code Civ. Proc., §§ 1286 and 1287), is generally the result of a final adjudication on the merits by the arbitrator (see *Lonky v. Patel* (2020) 51 Cal.App.5th 831, 844, citing Code Civ. Proc., § 1283.4 ["[A]n 'award' as a written ruling that 'include[s] a determination of all the questions submitted to the arbitrators the decision of which is necessary in order to determine the controversy' "].)

While this is not an arbitration settlement, I also note that our decision as well as the *Madrigal* majority could create a two-tiered system, where settlements are subject to section 998(c)(1)'s cost-shifting provision in the litigation context but not arbitration. For example, while an accepted valid section 998 offer in arbitration will result in an award, the same cannot be said for a non-section-998 settlement offer and acceptance. Generally, in arbitration, when the parties settle, the arbitration

6

is withdrawn or dismissed, and the parties and the arbitrator are bound by the terms of the settlement agreement.  But there is no resulting award.  Thus, applying section 998(c)(1) in the settlement context could potentially create divergent outcomes for those parties who settle in arbitration versus parties who settle in the trial court.  This is contrary to the legislative intent in amending section 998 to apply to arbitrations by placing "parties in arbitration on equal footing with parties to civil actions."  (*Heimlich v. Shivji* (2019) 7 Cal.5th 350, 361–362.)

It is also notable that when the Legislature considered whether to expand section 998 to apply to arbitrations, "it considered various analyses that repeatedly stated section 998 (which then applied only in judicial proceedings) applies when a party rejects a settlement offer and subsequently fails to do better *at trial*.  For example, the analyses explained Senate Bill No. 73 (1997–1998 Reg. Sess.) would revise the law awarding costs against a party who rejected a section 998 offer and 'fails to do better at trial' by excluding postoffer costs from the calculation of whether the party does better than the rejected section 998 offer, by specifying a plaintiff who rejects a section 998 offer and 'fails to do better at trial' must pay the defendant's costs from the date of the offer, and by making the provision applicable to 'contractual and medical malpractice arbitrations.'  (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 73 (1997–1998 Reg. Sess.) as proposed to be amended July 16, 1997, p. 2; Sen. Com. on Judiciary, Analysis of Sen. Bill No. 73 (1997–1998 Reg. Sess.) as amended May 1, 1997, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 73 (1997–1998 Reg. Sess.) as amended Aug. 25, 1997, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 73 (1997–1998 Reg.

Sess.) as amended May 20, 1997, pp. 1–2; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 73 (1997–1998 Reg. Sess.) as amended July 21, 1997, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 73 (1997–1998 Reg. Sess.) as amended Aug. 11, 1997, p. 1; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 73 (1997–1998 Reg. Sess.) as amended Aug. 25, 1997, p. 1.)" (*Madrigal, supra*, 90 Cal.App.5th at p. 417.)

I also find that precluding the application of section 998(c)(1)'s cost-shifting provision to settlements is consistent with the statute's purpose, which our Supreme Court explained is to create an incentive for settlement by "authoriz[ing] an award of costs to a party that makes a pretrial settlement offer when the opponent rejects the offer and obtains a lesser result at trial." (*Heimlich v. Shivji, supra*, 7 Cal.5th at p. 356, citing *Martinez v. Brownco Construction Co.* (2013) 56 Cal.4th 1014, 1019.) " 'Section 998 aims to avoid the time delays and economic waste associated with trials and to reduce the number of meritless lawsuits.' " (*Madrigal, supra*, 90 Cal.App.5th at p. 418, quoting *Martinez v. Brownco*, at p. 1019.)

While the majority emphasizes section 998(c)(1)'s purpose to encourage early settlements, its interpretation would come at the expense of the parties' ability to settle later as the litigation progresses. "Although settlements achieved earlier rather than later are beneficial to the parties and thus to be encouraged, our public policy in favor of settlement primarily is intended to reduce the burden on the limited resources of the trial courts. The trial of a lawsuit that should have been resolved through compromise and settlement uses court resources that should be

8

reserved for the resolution of otherwise irreconcilable disputes."
(*Wilson v. Wal-Mart Stores, Inc.* (1999) 72 Cal.App.4th 382, 390–391.)

I believe the majority's holding will also discourage plaintiffs from settling and instead encourage them to take their chances at trial, if a plaintiff's counter-section 998 offer were to shift the costs back to the plaintiff.  Indeed, plaintiffs who have rejected an initial section 998 offer will be disinclined to offer or accept any subsequent settlement offer that is arguably less favorable than the first section 998 offer, given the added risk that plaintiff would have to absorb its own costs and use settlement funds to cover the defendant's costs.  Conversely, defendants would be more likely to reject a settlement offer that might be more favorable to the plaintiff than a prior 998 offer thereby precluding a defendant from shifting costs to the plaintiff.  Accordingly, both parties would have more incentive to go to trial regardless of how the litigation develops and the parties' evolving insight into the merits of their respective cases.

The majority also notes that the present dispute between the parties could have been avoided if they simply accounted for the attorney fees and costs in the settlement rather than reserving any arguments or objections to fees and costs.  Indeed, as the majority points out, the parties could have settled on any terms, including the cost issue together with the underlying claims.  While settlement on those terms was theoretically possible, the facts are that the parties were unable to do so. This is evidence that the additional burden of necessarily including fees and costs into every settlement injects additional complications and difficulties to resolving the case, which is contrary to the statute's purpose.

9

Finally, there is at least some indication that the majority's decision is upsetting the status quo and is contrary to the historical understanding of section 998(c)(1). As stated previously, some version of section 998(c)(1)'s cost-shifting provision has been California law for at least 170 years. However, only in the last year has an appellate court reached the issue. When we consider the fact that the overwhelming majority of civil cases resolve in settlements, and that only two recent California appellate courts, including the case at bar, have ever had to address the issue may reflect a general understanding by the trial courts and the parties that section 998(c)(1)'s cost-shifting provision does not apply to settlements. (See *Madrigal, supra*, 90 Cal.App.5th at pp. 417–418.)

For the foregoing reasons, I would affirm the trial court's order and award.


VIRAMONTES, J.

10